# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE LATOUR, an individual, | CASE NO. 11cv1167-LAB (RBB) |
| Plaintiff, | **ORDER DENYING MOTION TO VACATE IN PART ARBITRATION AWARD;** |
| vs. | |
| | **ORDER GRANTING MOTION TO CONFIRM ARBITRATION AWARD; AND** |
| CITIGROUP GLOBAL MARKETS INC., a New York corporation, | **ORDER DENYING PETITION TO VACATE ARBITRATION AWARD** |
| Defendant. | **[DOCKET NUMBERS 1, 4, 20]** |

Plaintiff Suzanne LaTour filed a petition asking the Court to vacate in part an arbitration award against her, confirm the portion of the arbitration award in her favor, and award her costs and attorney's fees. The underlying arbitration award concerned an employment dispute and an attempt to enforce a promissory note against her. She also filed a motion seeking the same relief. Defendant Citigroup Global Markets, Inc. ("CGMI") filed a cross-petition seeking confirmation of the entire arbitration award, which is described in the docket as a motion for confirmation of the award. For the sake of convenience, the Court will refer to these documents as the petition (Docket no. 1); LaTour's motion, or the motion to vacate (Docket no. 4); and CGMI's motion, or the motion to confirm (Docket no. 20).

1    Although the parties requested oral argument on the cross motions, they agree the

2   issue is whether the arbitration panel manifestly disregarded applicable law in reaching its

3   decision. Because "manifest disregard" is a deferential standard, *Johnson v. Wells Fargo*

4   *Home Mortg., Inc.*, 635 F.3d 401, 416 (9th Cir. 2011), any error warranting vacatur or

5   modification of the award would necessarily be clear and obvious once it is pointed out in

6   briefing. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d

7   Cir. 1986) (manifest error is "obvious and capable of being readily and instantly perceived

8   by the average person qualified to serve as an arbitrator"). The Court therefore determined

9   that oral argument would not be necessary, and will rule based on the submitted briefing.

10   *See* Civil Local Rule 7.1(d)(1) ("A judge may, in the judge's discretion, decide a motion

11   without oral argument.")

12   **I.    Jurisdiction and Applicable Law**

13    The petition invokes diversity jurisdiction, although it is clear the source of the Court's

14   jurisdiction is federal question jurisdiction under the Federal Arbitration Act (FAA). CGMI's

15   motion invokes both diversity and federal question jurisdiction (via the FAA).  Although the

16   parties may obtain review of some arbitration awards under state statutory or common law,

17   the FAA provides the exclusive basis and standards in federal law for modifying or vacating

18   an arbitration award.  *See Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590

19   (2008).

20    The briefing on both motions invoke only the FAA's standards, and neither party has

21   asked the Court to apply some other law or any legal standard other than those set forth in

22   the FAA.  (*See* Mem. of P. & A in Supp. of Mot. to Vacate (Docket no. 4-1) at 13:1–27 (citing

23   FAA as the basis for the Court's power to modify the arbitration award).) CGMI did cite the

24   statute of limitations in Cal. Civ. Proc. Code § 1288, but neither party has invoked Cal. Civ.

25   Proc. Code § 1285 (providing for confirmation, correction, or vacatur of arbitration awards)

26   or standards under that provision. Both parties have assumed the FAA's standards govern,

27   and have not developed any arguments that might pertain to the application of state law

28   standards. The Court therefore deems any arguments arising from the application of state

1  law standards waived. *See Halicki Films, LLC v. Sanderson Sales & Marketing*, 547 F.3d

2  1213, 1229–30 (9th Cir. 2008) (citations omitted) (arguments not raised in the opening brief,

3  and arguments "made in passing and inadequately briefed" are waived).

4       The underlying transaction and agreement involve interstate commerce, so as to bring

5  it within the FAA, because they establish financial obligations between a New York employer

6  and LaTour, a California employee, and also because LaTour was employed as an account

7  executive at a brokerage firm. *See* 9 U.S.C. § 2, *Thorup v. Dean Witter Reynolds, Inc.*, 180

8  Cal. App. 3d 228, 233 (Cal. App. 1 Dist., 1986) ("It is indisputable that an employment

9  contract involving an account executive of a brokerage firm is a contract 'involving

10  commerce' and is subject to the [Federal Arbitration] Act.")

11       The Court will therefore apply the FAA's standards, and no others, and can exercise

12  federal question jurisdiction over this controversy.

13  **II.    Discussion**

14       The note at issue here was a recruitment loan of $581,150 to LaTour, paid to her

15  when she began employment with CGMI. LaTour and CGMI Holdings (of which CGMI is a

16  subsidiary) were named as parties to the note, although the same day LaTour entered into

17  a special compensation agreement with CGMI in which CGMI agreed to pay back the note

18  for her over time, assuming she remained in CGMI's employ. In other words, CGMI Holdings

19  lent LaTour $581,150, with the understanding that the loan would be forgiven over time,

20  provided LaTour remained in CGMI's employ. After over four years, and before the loan was

21  paid off, LaTour left CGMI, which triggered a repayment obligation. LaTour, however, argues

22  that CGMI was not the holder of the note and was therefore not entitled to enforce it.

23       The parties submitted their dispute to the Financial Industry Regulatory Authority

24  (FINRA), where it was arbitrated by a three-member panel. The majority determined that

25  CGMI was entitled to enforce a promissory note LaTour had executed. But a dissenting

26  panel member believed that because CGMI was not a holder of the note, under New York

27  law it was not entitled to enforce it. The panel awarded CGMI $322,861.11 plus interest,

28  costs, and attorney's fees.

According to LaTour, the dissenter was correct, and the panel majority's decision was made in "manifest disregard of the law," which is one basis under the FAA for vacating or modifying an arbitration award. She argues the question was not a close call, and the majority disregarded the law on a straightforward issue that could only have been resolved as the dissenter argued it should be. (Opp'n to Mot. to Confirm, 1:9–16.)

The "manifest disregard" standard is difficult to satisfy. As the Ninth Circuit has explained,

> "Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (citing *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995)). "To vacate an arbitration award on this ground, '[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it.' " *Id.*

*Biller v. Toyota Motor Corp.*, ___ F.3d ___, 2012 WL 336135, slip op. at *7 (9th Cir. Feb. 3, 2012). An error of law or a failure to understand the law is insufficient. *Carter v. Health Net of California, Inc.*, 374 F.3d 830, 838 (9th Cir. 2004); *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (citation omitted) ("[C]onfirmation is required even in the face of erroneous findings of fact or misinterpretations of law.") Arbitrators are not required to state reasons for their findings, but are presumed to have made their award on permissible grounds. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992). "[T]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (citation omitted).  It follows from these authorities that inartful or incomplete explanations of the panel's award will not support vacatur.

The arbitrator who dissented in part gave his reasoning only briefly:

> Arbitrator Michael D. Briggs dissents as to the Panel's decision regarding the award of damages, costs, and attorneys' fees to Claimant and is of the minority opinion that Claimant is not a "holder" of the Promissory Note under New York law and, as a result, cannot enforce it against Respondent.

(Pet., Ex. 1 at 10.) The majority gave its reasoning why CGMI was entitled to enforce the

1   note, in similarly brief form:

2          At the conclusion of Claimant's case, Respondent moved to dismiss the
       case on the basis that the Note that Claimant sought to enforce against
3          Respondent was not owned by the CGMI entity, an indirect parent[1]
       company of CGMI Holdings. A majority of the panel denied Respondent's
4          motion following its determination that CGMI had possession of the Note
       and that it and CGMI Holdings were jointly creating the document and the
5          manner of payment by Respondent.

6   (*Id*. at 5.) The panel considered but rejected LaTour's motion for reconsideration of this

7   issue. (*Id*.)

8          LaTour's position is that only a holder of the note as defined in N.Y. Comm'l Code § 1-

9   201(20) is entitled to enforce the note. (Mot. to Vacate, 17:3–24.) That section defines

10  "holder" as "a person who is in possession of a document of title or an instrument or an

11  investment certificated security drawn, issued or indorsed to him or to his order or to bearer

12  or in blank." LaTour says CGMI argued it was entitled to enforce the note because it was a

13  third party beneficiary, not because it was a holder. LaTour also argues the note was not

14  negotiated or otherwise transferred to CGMI. Although the note says CGMI Holdings

15  retained the right to assign its rights in the note to any of its affiliates, LaTour says no

16  documents exist to show such an assignment was ever made and CGMI never attempted

17  to show that CGMI Holdings ever assigned its rights in the note to CGMI. (*Id*., 20:8–15.)

18  However, neither party argues that the note was assigned to CGMI.

19         CGMI, for its part, explains the majority's ruling by citing the law presented to the

20  panel. Among other things, CGMI cites the official comments to New York's Uniform

21  Commercial Code § 3-201, which explains that a transferee of an unindorsed note is not

22  entitled to a *presumption* that he is entitled to recover on the note. (Opp'n to Mot. to Vacate,

23  20:1–9. (citing § 3-201 n.8).) Although a transferee is not presumed to be a holder, it can

24  present evidence that it is a holder.  CGMI cites *Corporation Holdings Co. v. Wieber*, 246

25  N.Y.S. 109, 110 (N.Y.A.D., 3d Dept. 1930) for this proposition. In that case, the court

26  received evidence showing that the holder transferred certain notes for value, and held that

27  ───────────────

28         [1] This appears to be a factual error, but not a material one. It appears CGMI was a
    subsidiary of CGMI Holdings, not the other way around. Either way, though, the two entities
    were affiliated.

1   the transferee had proved that it had become the holder.  This principle remains good law.

2   *See, e.g., New Year's Nation, LLC v. JP Morgan Chase Bank, N.A.*, 873 N.Y.S.2d 513

3   (N.Y.Sup., 2008) (holding that transferee had proved it was the holder of a check).

4           The panel majority did not determine that the note had been transferred to CGMI.

5   Rather, it determined that CGMI was a co-creator of the note, and therefore a holder.[2]

6   Assuming this is correct,  N.Y. Comm'l Code § 1-201(20) is no longer an obstacle to CGMI's

7   enforcement of the note. That section defines a holder of an instrument as "a person who

8   is in possession of . . . an instrument . . . drawn, issued, or indorsed to him or to his order

9   or to bearer or in blank." If, as the majority determined, both entities created the note, then

10  the note is "drawn" or "issued" to them. Whichever of them was in possession of it (here,

11  CGMI) could reasonably be understood as the holder.

12          LaTour does not attempt to show that such a joint status was impossible; rather, she

13  appears to deny it was ever done: "*the Panel did not determine that CGMI was a 'holder of*

14  *the Note*, and if they had, such a determination would be in manifest disregard of the law."

15  (Opp'n to Mot. to Confirm, 5:16–19.) In fact, the panel majority did determine that CGMI was

16  a holder of the note, based on its determination that CGMI and CGMI Holdings jointly

17  created the note, and the undisputed fact that CGMI had possession of the note. (Pet., Ex.

18  1 at 5 (noting majority's earlier determination that "CGMI had possession of the Note and

19  that it and CGMI Holdings were jointly creating the document and the manner of payment

20  by Respondent").)

21          LaTour appears to be arguing that because CGMI's name does not appear on the

22  note, CGMI did not jointly create it. (Opp'n to Mot. to Confirm, 5:22–24 ("The Note is payable

23  'to the order of Holdings.'").) She also summarily added that the majority's ruling "is not

24  supported by any legal authority because there is no such authority," (*Id.*, 9:2–4) and argues

25  that "'Joint creation of documents and manner of payment' is not some legal right or theory

26  that allows a party to enforce a negotiable instrument in New York or in any other

27  _____

28      [2] Even accepting LaTour's representation that CGMI didn't argue this theory to the
    panel, the majority's decision on some basis or theory not argued to it is not "manifest
    disregard of the law."

jurisdiction." (*Id*., 9:9–12.)  LaTour does not cite any authority for the principle that two entities could not jointly create the note.  Other than this, LaTour has nothing to say about whether the two entities jointly created the note.

Under New York law, a note or other instrument can exist for the benefit of more than one payee. For example, it is commonplace for instruments to be payable to either of two parties. *See, e.g., L. B. Smith, Inc. v. Bankers Trust Co. of Western N.Y.*, 439 N.Y.S.2d 543, 544–545 (N.Y.A.D., 1981) (construing check as written to either of two payees in the alternative). Her strongest argument is that the language of the note mentions only CGMI Holdings, and not CGMI as payee. On the other hand, the note provides that it inures to the benefit of CGMI Holdings' affiliates, (Mot. to Vacate, Ex. 3, ¶ 10), of which CGMI is one. The note refers to LaTour's employment with CGMI Holdings or its affiliates, making clear that the term of the loan was to last only as long as that employment did. (*Id*., ¶ ¶ 2, 4.) Because it was clear on the day the note was executed that LaTour would be working for CGMI, not CGMI Holdings, the most reasonable inference was that the note was being entered into primarily for the benefit of CGMI, rather than CGMI Holdings. But more importantly, the note provides that either CGMI Holdings or its affiliate was to report as income the value of forgone interest (*id*., ¶ 3), and that either CGMI Holdings or any of its affiliates would have the right to enforce the note in the event of default. (*Id*., ¶ 7.) Both of these provisions suggest that CGMI was a holder of the note. If CGMI were not a lender, the provision concerning interest it forwent would have no meaning. And if CGMI were not a holder and therefore could not enforce the note, the enforceability clause would have no meaning. At the very least, the majority could have found these provisions created an ambiguity about whether the note's creator was CGMI Holdings only, or both entities jointly.

The majority's decision is well founded in the business realities of the transaction. The undisputed business dealings among the parties, together with the instruments LaTour executed, show that all three parties contemplated that LaTour would work for CGMI, not for CGMI Holdings, and that as part of LaTour's compensation, CGMI would pay back the loan to CGMI Holdings. This amounted to gradual forgiveness of the original loan.

Because LaTour left CGMI's employment before the loan was completely forgiven, and because by the terms of the loan LaTour was to pay back that portion that had not yet been forgiven, it stands to reason she would have to pay *someone*—either CGMI Holdings, or its assignee. LaTour does not attempt to show there was any competing demand for repayment by CGMI Holdings or its successor. Based on this alone, it is a reasonable inference that both CGMI and CGMI Holdings understood that CGMI was entitled to repayment and CGMI Holdings was not. LaTour's theory of the case, by contrast, does not make business sense. Under her theory, some entity besides CGMI—probably either CGMI Holdings or a successor—is abandoning its claim to over $300,000.

The arbitration panel majority found that CGMI and CGMI Holdings had both jointly created the note. In view of the details of the note and the special compensation agreement, as well as the dealings and relationships between CGMI, CGMI Holdings, and LaTour, this finding does not evince manifest disregard for the law.  It is supported by the facts that CGMI and CGMI Holdings were related entities, that instruments were executed on the same day and for the same amount of money, and that LaTour was given money by CGMI Holdings yet was employed by CGMI. And, as discussed, the note is arguably ambiguous about who the payee (and thus, the holder) was.  Assuming CGMI and CGMI Holdings jointly created the promissory note, CGMI as possessor of the note would apparently be its holder and entitled to enforce the note, pursuant to the law CGMI has cited. If this is not so, LaTour has not shown why not.

LaTour has not shown that she brought to the panel's attention any controlling authority or even argument that would have prevented the panel from determining that CGMI and CGMI Holdings jointly created the note. The Court has reviewed the briefs she presented to the panel, and such authority or argument is missing. In her arbitration hearing brief, she argued that CGMI could not collect on the note, but raised the defenses of

/ / /

/ / /

/ / /

1    frustration of purpose and failure of consideration. (Mot. to Vacate, Ex. 15, 9:21–13:13.)[3]

2    In her summary of claims (Mot. to Vacate, Ex. 18), she raised the same two defenses.

3         LaTour's arbitration brief assumed CGMI was the proper entity to collect on the note,

4    but argued that CGMI's actions and benefits she provided to it excused her non-

5    performance. (*See, e.g.,* Mot. to Vacate, Ex. 15,10:5–9 (". . . CGMI has been fairly

6    compensated by the revenues it received resulting from LaTour's efforts during the four

7    years and nine months she worked for CGMI. Therefore, LaTour should not be required to

8    make any further payment to CGMI on the Note.") She also asked the panel to set off any

9    award on the note by an award in favor of LaTour against CGMI. (*Id.*, 18:22-26.)

10        Such defenses and theories assume CGMI was the holder of the note.   In other

11   words, if CGMI Holdings were the holder, CGMI's actions or omissions wouldn't excuse her

12   failure to repay CGMI Holdings, and any money CGMI might owe her would not offset any

13   money she owed CGMI Holdings.

14        After CGMI presented its case in chief, LaTour first raised her argument that CGMI

15   wasn't really a holder of the note. She raised this in an oral motion that was supported by

16   briefing, which the panel denied without explanation. (Mot. to Vacate, Ex. 21, page 260.) The

17   reason given for the lack of explanation was that the denial was the result of a split decision.

18   (*Id.*)

19        LaTour then moved for reconsideration, again raising the argument that CGMI wasn't

20   a holder of the note. Her briefing on that motion points back to her first amended answer to

21   CGMI's statement of claim, in which she raised the defense, albeit in summary form. (Mot.

22   to Vacate, Ex. 21 at 261 (citing thirteenth affirmative defense: "Claimant is not the real party

23   in interest and has no standing or capacity to pursue the claims asserted in the Statement

24   of Claim.")

25        LaTour's motion for reconsideration raises essentially the same argument she is

26   raising in her petition to this Court, that because CGMI did not sign the note, nor was the

27   _____

28        [3] This appears at page 183 of the motion. Although the motion's exhibits are consecutively paginated, for the sake of convenience and clarity the Court will refer to page and line numbers of briefs, when available.

note transferred to CGMI, CGMI is not a holder as defined in N.Y. Comm'l Code § 1-201(20) and therefore cannot enforce the note. Her motion argued the panel should reconsider its earlier ruling because it was made in manifest disregard of the law, and because the record was still open. The panel summarily denied the motion for reconsideration, without explanation. (Mot. to Vacate, Ex. 30 at 376.) It was only later, when the award was made, that the majority and dissent gave their reasoning.

Had LaTour litigated her case in this fashion before a court rather than a panel of arbitrators, the court would have been justified in refusing to revisit the issue. When filing her briefing, LaTour was aware of the language of the note and the fact that CGMI didn't have an assignment or modification of the note (Mot. to Vacate, 2:16–18, 8:19–20 (discussing failure to produce assignment during discovery phase)), but as discussed her briefing represents that CGMI was the holder.  It was only after CGMI had presented its case in chief that LaTour raised the issue of whether CGMI was the holder at all. *See, e.g., Halicki Films*, 547 F.3d at 1229–30 (arguments not raised in the opening brief are waived). Her passing mention of this theory in her answer would have been insufficient to develop this theory, *id.* (arguments insufficiently developed are waived), much less support a "manifest disregard" claim. CGMI characterizes LaTour's motions as attempts to salvage an argument she realized she was going to lose: "[A]fter seeing CGMI's entire case-in-chief and recognizing the strength of CGMI's position, LaTour made an oral application to dismiss the case on the tenuous premise that CGMI was not a holder of the Note." (Opp'n to Mot. to Vacate, 10:5–7.)

LaTour was given no explanation at the time for the denial of her oral motion to dismiss, so she didn't know that the majority had decided that the two entities jointly created the note. Because she didn't know this, she didn't specifically brief that issue in her motion for reconsideration; instead, she merely argued that CGMI wasn't the holder of the note. And because she didn't specifically explain to the panel why the two entities didn't or couldn't have jointly created the note, the panel didn't manifestly disregard the law. *See Biller*, 2012 WL 336135, slip op. at *7 (requiring evidence that the arbitrators recognized the law and intentionally disregarded it).  "To demonstrate manifest disregard, the moving party must

show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same.") *Bosack*, 586 F.3d at 1104 (alterations, internal quotation marks, and citation omitted). Because the panel never showed it recognized any binding law to the contrary, it did not manifestly disregard that law when denying LaTour's oral motion.

Requiring LaTour to anticipate the majority's reasoning or divine it after the fact might seem unduly harsh, except that the FAA doesn't require arbitrators to provide any explanation at all. The fact that the panel didn't tell her what she would have needed to know to brief her motion for reconsideration as fully as she might have liked is not a basis for vacatur. The FAA generally defers to arbitrators' procedural decisions, *see United Steelworkers of America v. Ideal Cement Co.,* 762 F.2d 837, 841 (10th Cir.1985)*,* and the panel's decision not to engage in an ongoing dialogue on an issue LaTour could have raised and briefed earlier does not form a basis for this Court's review of the award.

## III.   Conclusion and Order

Because LaTour has not shown the panel manifestly disregarded the law in making its award, her motion to vacate, and the petition, are **DENIED**, and CGMI's motion to confirm the award, as well as its cross-petition to confirm the award is **GRANTED**. The award is **CONFIRMED**.


**IT IS SO ORDERED**.

DATED:  March 15, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge